Teresa & Raymond GILBERT
Plaintiffs,

v.

MONACO COACH CORPORATION
Defendant.

No. CIV.A.1:03CV00328JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 9, 2004.

1324

Erik Scott Fortas, Krohn & Moss, Atlanta, GA, for Plaintiffs.

Michael David Hostetter, Mark Daniel Lefkow, Nall & Miller, Atlanta, GA, for Defendant.

### ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motion for Summary Judgment [27] AND plaintiff's Motion for Oral Argument on defendant's motion for summary judgment [29]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [27] should be **GRANTED in part and DENIED in part,** AND plaintiff's Motion for Oral Argument on defendant's motion for summary judgment [29] should be **DENIED.**

### BACKGROUND

This case arises out of plaintiffs' purchase of a recreational vehicle. Plaintiffs contend that they have experienced continuing problems with this recreational vehicle, and defendant has been unable to repair the recreational vehicle to their satisfaction. Plaintiffs have brought suit alleging claims under the Uniform Commercial Code, state warranty law, and the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–12 (2003). Unless otherwise noted, the Court draws the undisputed facts from Defendant's Statement of Material Facts as to Which There is No Genuine Issue to Be Tried ("SMF") [27] and Plaintiffs' Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment ("PSMF") [30]. When plaintiffs have disputed a specific fact and pointed to evidence in the record that supports their version of events, the Court has viewed all evidence and factual inferences in the light most favorable to plaintiffs, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett,* 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir.1993). When the Court could discern a material factual dispute from this pleading, the Court has made all inferences in a light most favorable to plaintiffs. Accordingly, the following facts are either not disputed or are viewed in the light most favorable to plaintiffs.

### I. PURCHASING THE RECREATIONAL VEHICLE

Plaintiffs purchased a 2001 Safari[1] Serengeti Recreational Vehicle (the "RV") on June 3, 2002, from La Mesa RV Center, which is located in Arizona. (SMF at ¶ 3.) The sales contract for the RV was entered

1. Defendant Monaco Coach Corporation has assumed the warranty obligations of Safari

into in Arizona. (*Id.* at ¶ 4.) Plaintiffs took possession of the RV on June 6, 2002. (*Id.* at ¶ 3; PSMF at ¶ 5.) While plaintiffs purchased the RV, entered into the sales contract, and took possession of the RV in Arizona, at all times relevant, they were residents of Georgia. (PSMF at ¶ 2.)

Plaintiffs knew that they could either accept or reject the RV and chose to accept it, knowing that the vehicle had problems with the electrical system, DVD, VCR, satellite system, and the color of some doors. (SMF at ¶ 4 (citing Raymond Gilbert Dep., attach. as Ex. D to Def.'s Br. in Supp. of Mot. for Summ. J., "Def.'s Br.," [27], at 32, 26–27).) Plaintiffs maintain that they accepted the RV, knowing of these problems, but with the understanding that the dealer would repair the problems. (PSMF at ¶ 5; Raymond Gilbert Dep. [23] at 32–33.)

## II. THE LIMITED WARRANTY

Plaintiffs received a limited warranty, issued by Safari Motor Coaches ("Safari"), with the purchase of the RV (the "Limited Warranty"). (SMF at ¶ 5.) The Limited Warranty "warranted that 'the **portions of the vehicle which Safari Motor Coaches manufactures and Safari Motor Coaches' workmanship** shall be free from defect for the period beginning on the date of purchase and continuing for one (1) year from the date of purchase or twelve thousand (12,000) miles, whichever occurs first." ' (SMF at ¶ 5 (quoting § 2 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27])(emphasis original).) The Limited Warranty also covers portions of the vehicle supplied by Safari. (§ 2 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27].)

The Limited Warranty expressly excluded items not manufactured or supplied by Safari, as well as " 'any loss, injury, or damage to person or property resulting from any defect in the vehicle, [and] . . . direct, indirect, incidental, special or consequential damages of any nature . . .' " (*Id.* ¶ 6 (quoting § 6 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27]).) The Limited Warranty also excluded items installed outside the Safari factory. (§ 3 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27].) Finally, the Limited Warranty limits plaintiffs' remedy as to a warranted part to repair or replacement of the defective part. (§ 2 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27].)

## III. PROBLEMS WITH THE RECREATIONAL VEHICLE

Plaintiffs have alleged problems with the waste system, exterior body, interior trim, electrical system, doors, and brakes. (Compl., attach. as Ex. A to Def.'s Br. [27], at ¶ 10.)

Four days after taking possession of the RV, plaintiffs returned it to the dealer for repairs. (PSMF at ¶ 5.) In all, plaintiffs have taken their RV to defendant's authorized dealers for repair at least seven times. (*Id.*) At defendant's direction, plaintiffs took the RV to Planet RV, located in Kennesaw, Georgia, for repairs. (*Id.* at ¶ 6.) Planet RV told plaintiffs it needed to take down the walls of the RV in order to correct the sewage odor problem. (*Id.*) Plaintiffs paid for the repair work performed by Planet RV; Planet RV instructed plaintiffs to seek reimbursement from defendant. (*Id.* at ¶ 7.) While plaintiffs contacted defendant regarding this reimbursement request, plaintiffs have not been reimbursed. (*Id.* at ¶ 8.)

Motor Coaches. (Def.'s Br. in Supp. of Mot. for Summ. J. [27] at 3, n. 2.)

Since filing this lawsuit, plaintiffs retained Mike Wardingley as an expert, for the purpose of confirming the problems plaintiffs had experienced with the RV and determining their causes. Plaintiffs paid Wardingley a flat fee of $178.85 for his services. (SMF at ¶ 8.) Wardingley's services did not include a full diagnosis of any problems he detected. (*Id.* at ¶ 9.)

Wardingley investigated the sources of the problems with plaintiffs' RV. First, he determined that the gray, rather than black, water tank was the cause of the odor in the coach. (*Id.* at ¶ 11.) Second, while Wardingley was unable to determine the source of the problem with the electrical switching, he did determine that there were actually two problems, as the lights failed to properly function off both the inverter and the vehicle itself. (*Id.* at ¶ 14; Wardingley Dep. [25] at 22.) Third, Wardingley failed to determine the source of the wandering steering problem; he said it was normal for alignment to go out over time, but he was unsure as to whether the alignment was causing the problem. (*Id.* at ¶¶ 17–18.) Fourth, he could not determine the source of the problems with the satellite television. (*Id.* at ¶ 23.) Fifth, Wardingley was unable to determine the source of leaks, although he identified the air conditioner and compressor as likely causes. (*Id.* at ¶¶ 27–28.) Sixth, Wardingley thought the cause of the headlights problem could be a combination of heat and water. (*Id.* at ¶ 30.) Seventh, he could not determine the cause of the problems with the cameras, as he is not qualified to do so. (*Id.* at ¶ 37.) Eighth, he was unable to determine why the hyrdo hot did not function properly. (*Id.* at ¶ 39.) Ninth, as to dash vibration, which defendant claims plaintiffs never complained of to the repairmen, Wardingley thought the cause could be an imbalance of the tires. (*Id.* at ¶¶ 44, 46–47.)

Defendant does not appear to contest the existence of some of the problems alleged by plaintiffs, instead contesting plaintiffs' chosen remedy. In other words, as to these problems, defendant maintains that the they would be relatively inexpensive to repair, making revocation of acceptance an inappropriate remedy. Specifically, while plaintiffs allege that the cargo compartment is defective, the compartment can still open and close. (*Id.* at ¶ 33.) Repairing this defect would cost at most $170.00. (*Id.* at ¶ 35.) Second, to repair the fender vibration problem alleged by plaintiffs would cost at most $700.00. (*Id.* at ¶ 36.) Third, the wallpaper problem alleged would cost at most $150.00 to repair. (*Id.* at ¶ 42.) Fourth, while defendant maintains that there is no evidence to suggest that it represented to plaintiffs that the medicine cabinet wood would match the other wood in the coach, the cost to replace the cabinet to so match would be at most $500.00. (*Id.* at ¶¶ 49–50.)

## IV. THE PROBLEMS WITH THE RV AND THE LIMITED WARRANTY

Defendant maintains that it is not responsible for the repair of the problems with plaintiffs' RV, as there is insufficient evidence to show that the problems alleged are covered by the Limited Warranty. (*Id.* at ¶¶ 13, 15–16, 19, 21–22, 25–26, 27–29, 31–32, 34, 38, 40–41, 43, 45, 48, 49, 51, 52.) The Limited Warranty, as discussed *supra*, only covers items which Safari manufactured or supplied, as well as defects in Safari's workmanship. (*Id.* at ¶ 5 (quoting § 2 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27] ).) Items installed outside the Safari factory are explicitly excluded from warranty coverage. (§ 3 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27].)

Because of defendant's inability to properly repair the RV, plaintiffs contacted defendant, seeking to revoke their acceptance of the vehicle. (*Id.* at ¶ 9.) Since October 19, 2002, the day on which plaintiffs brought the RV to their Georgia home, the RV has remained parked in their driveway; plaintiffs maintain that the electrical problems render the RV unusable. (*Id.* at ¶ 11.) Plaintiffs contend that the sewage odor problem persists. (*Id.*)

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely " 'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence [2] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly proba-

2. The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

tive." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. THE CLAIMS

Plaintiffs have alleged three counts in their complaint: breach of written warranty, breach of implied warranty, and revocation of acceptance. (Compl., attach. as Ex. A to Def.'s Br.[27], at ¶¶ 21–52.) All three claims are asserted under the Uniform Commercial Code (the "UCC"), Georgia state law, and the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–12 (2003) ("MMWA"). (*Id.*) The Court will address each claim under each law.

### A. UCC CLAIMS

■ Plaintiffs have asserted claims based on the UCC. (Compl., attach. as Ex. A to Def.'s Br.[27], at ¶¶ 21–52.) The UCC, itself, is not the law of any state, nor is it federal law. In order to support a cause of action, a plaintiff must rely on a state's codification of the UCC. Plaintiffs here have failed to so rely. Accordingly, the Court **GRANTS** defendant's Motion for Summary Judgment as to any claims based on the UCC itself.

### B. STATE LAW CLAIMS

All three claims asserted by plaintiffs— breach of written warranty, breach of implied warranty, and revocation of acceptance—are claims under state law. Plaintiffs have asserted these claims under Georgia state law. (Compl., attach. as Ex. A to Def.'s Br.[27], at ¶¶ 21–52.) These claims are based on the sales contract entered into between plaintiffs and the dealer. Plaintiffs received these warranties upon the execution of the sales contract.

■ A federal court sitting in diversity must apply the choice of law rules of the forum in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Georgia choice of law rules regarding actions sounding in contract focus on the place of contracting. With regard to contract actions, Georgia recognizes the rule of *lex loci contractus* and applies the law of the state where the contract is made or performed to resolve issues of validity and interpretation. *See Allgood Elec. Co. v. Eby Constr. Co.*, 85 F.3d 1547, 1551 (11th Cir.1996) (applying Georgia law). Here, plaintiffs negotiated the sales contract in Arizona. They executed the sales contract in Arizona. The Court also notes that the performance of the contract—which consisted of plaintiffs accepting delivery of the vehicle—occurred in Arizona. The fact that plaintiffs are Georgia residents and that they used a repair shop in Georgia does not change this analysis. The Court concludes, therefore, that Arizona law applies. Any state law claims must be brought under Arizona law.

Plaintiffs have made allegations under Georgia law, which does not apply in this case. Accordingly, the Court **GRANTS** defendant's Motion for Summary Judgment as to all claims asserted by plaintiffs under Georgia law.

### C. MMWA CLAIMS

The MMWA gives consumers a private right of action against warrantors for both violations of substantive provisions of the statute *and* breaches of warranties, writ-

ten and implied. 15 U.S.C. § 2310(d). Plaintiffs have alleged substantive violations of the MMWA and breaches of both written and implied warranties.

### 1. Substantive Violations of the MMWA

Plaintiffs have alleged that defendant attempted to disclaim the implied warranty of merchantability. (Compl., attach. as Ex. A to Def.'s Br. [27], at ¶ 43.) Such an attempt, if true, would violate the MMWA. 15 U.S.C. § 2308. Defendant argues that plaintiffs abandoned this claim, requiring its dismissal. (Def.'s Br. at 24.) Defendant bases this argument on the fact that defendant sent plaintiffs a good faith letter, requesting that plaintiffs explain this allegation, and plaintiffs never responded. (Id.) Plaintiffs argue that they have not waived this claim, that plaintiffs were not required to respond to defendant's request, as defendant filed no motion to compel and the information was evident from the information produced by defendant. (Pls.' Mem. at 25.)

The Court finds it unnecessary to evaluate the arguments of the parties as to this allegation. The statutory remedy for violating the rules on disclaiming implied warranties is that the purported disclaimer is invalid. 15 U.S.C. § 2308(c). Therefore, if defendant did in fact try to disclaim any implied warranties, such disclaimer would be void and plaintiffs would be able to proceed against defendant on breach of implied warranties claims. However, as discussed, *infra*, plaintiffs' claims here are insufficient to survive defendant's motion for summary judgment.

■ Plaintiffs also appear to have alleged that defendant failed to abide by the minimum standards of written warranties

by failing to repair the RV after having had a reasonable amount of time to do so. (Compl., attach. as Ex. A to Def.'s Br. [27], at ¶ 30.) Section 2304 of the MMWA sets out the federal minimum standards for warranties, which include requiring the warrantor to both remedy the consumer product within a reasonable amount of time and allow the consumer to elect a refund or replacement if the warrantor is unable to repair the product after having a reasonable number of attempts to do so. 15 U.S.C. § 2304. Plaintiffs rely on this section of the MMWA in making out their claim. (Pls.' Mem. at 6.) However, this section only applies to full warranties and the warranty at issue in this case is a limited warranty. Section 2303(a)(2) states that if a written warranty fails to meet the standards set forth under § 2304, then the warranty must be conspicuously labeled as "limited." 15 U.S.C. § 2303. Therefore, failure of a written warranty to abide by § 2304 does not mean that the written warranty violates the statute; rather, it means that the written warranty must be conspicuously labeled "limited." The written warranty at issue here is so labeled. (*See* Limited Warranty, attach. as Ex. B to Def.'s Br. [27], at 1.) Therefore, the minimum standards provision does not apply to the warranty at issue in this case.

The Court finds no merit in plaintiffs' allegations that defendant has violated the substantive provisions of the MMWA. Accordingly, the Court **GRANTS** defendant's Motion for Summary Judgment as to all claims regarding violations of the substantive portions of the statute.

### 2. Written Warranty Claims Based on the MMWA

■ "A manufacturer's liability for breach of an express warranty derives

from, and is measured by, the terms of that warranty. Accordingly, the 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor."* *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (emphasis original). Therefore, whether a warrantor has breached a written warranty is decided by looking at the terms of the warranty. Defendant argues that it is entitled to summary judgment because plaintiffs have failed to put forth sufficient evidence establishing that the alleged problems with the RV are covered by the Limited Warranty, meaning that plaintiffs have failed to establish any breach. (Def.'s Br. at 19.) Plaintiffs' evidence, the testimony of Mike Wardingley, confirms that there are problems with the RV and Wardingley identifies possible, not definitive, causes of the problems. Defendant argues that this evidence is insufficient. Plaintiffs counter that they need to only present evidence that a problem or defect exists and not evidence regarding the source or cause of the defect. (Pls.' Mem. at 19.) They point to the repair history of the RV to support their claim that there are problems with the RV. (*Id.* at 16.)

### a. Plaintiffs Have Failed to Establish that Some of the Alleged Defects are Covered by the Limited Warranty

Defendant argues that plaintiffs have failed to put forth evidence demonstrating that the causes of the alleged defects are covered by the Limited Warranty, requiring summary judgment in its favor. (Def.'s Br. at 19–22.) Defendant makes this argument with respect to the following alleged defects: the odor, the electrical problem, the steering problem, the prob-

lem with the satellite television system, the leaks, the dimmed headlights, the problem with the back up cameras, the problem with the hydro hot, and the dash vibration problem. (*Id.*) Moreover, defendant makes this argument with respect to the problems alleged by plaintiffs which their own expert was unable to confirm existed, i.e., any problems with the brakes or the suspension. (*Id.*) Defendant argues that plaintiffs "have, at most, presented the mere possibility of a defect of workmanship or manufacturing by Safari." (*Id.* at 21.) Plaintiffs counter that the work records establish the existence of the defects and that circumstantial evidence may be used to establish the existence of defects. (Pls.' Mem. at 16–18.) Moreover, according to plaintiffs, the burden is not on them to prove the cause of the defects. (*Id.* at 19–20.) Plaintiffs cite to cases from a variety of courts, none of whose decisions are binding on this Court, for the proposition that "[i]n light of the technological complexity of most automobiles currently on the market, forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to the very persons the [Magnuson–Moss] Warranty Act was meant to aid." *Mason v. Porsche Cars of North America, Inc.,* 688 So.2d 361, 367 (Fla.Dist.Ct.App.1997); *Nalbandian v. Byron Jackson Pumps, Inc.,* 97 Ariz. 280, 399 P.2d 681 (1965) (burden is not on plaintiff to prove the cause of the defect); *Bailey v. Montgomery Ward & Co.,* 6 Ariz.App. 213, 431 P.2d 108 (1967) (same in products liability case). The Court finds this reasoning sound.

One of Congress's express purposes in enacting the MMWA was "to make warranties on consumer products more readily understood and enforceable." H.R.Rep. No. 93–1107 (1974), *reprinted in*

1974 U.S.C.C.A.N. 7702. Indeed, Congress was concerned about the inability of consumers to have their products repaired. H.R.Rep. No. 93–1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7706. For the Court to then require a plaintiff bringing such an action to prove not only that a defect exists but also its exact, technical cause would thwart the intent of Congress. Warrantors, rather than consumers, are in the better position to diagnose the sources of problems complained of by consumers. Once a consumer has alerted the warrantor to the defect, the warrantor who wishes to avoid the repair or replacement cost must establish that the alleged defect is not caused by something covered by the issued warranty. To hold otherwise would place too great a burden on consumers owning defective, yet warranted, products and would render the warranties virtually useless.

■ Plaintiffs have presented competent evidence designating " 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). The work repair records demonstrate that they have experienced, and complained of, various problems with the RV. The deposition testimony of their expert has confirmed the existence of these problems, save the complaints regarding the brakes and suspension. The existence of these problems is not challenged. Moreover, plaintiffs' expert has testified as to what he believes are the causes of these problems, causes that may be covered by the Limited Warranty. While defendant characterizes the testimony of plaintiffs' expert on the sources of the problems as mere speculation, defendant will have the opportunity, at trial, to challenge his conclusions.

The Court also notes that while defendant focuses its argument on the fact that Safari did not manufacture the parts believed to be the sources of many of the problems alleged, the Limited Warranty also explicitly covers "portion[s] of the vehicle and any of its parts *supplied* or manufactured by Safari Motor Coaches." (§ 2 of Limited Warranty, attach. as Ex. B. to Def.'s Br. [27] (emphasis added).) Because Safari supplied plaintiffs with parts of the vehicle, such as headlights, the inverter, the air conditioning and satellite television systems, the Court finds defendant's argument that these parts were not manufactured by Safari and are therefore excluded from warranty coverage unpersuasive.

#### b. The Other Alleged Defects

Defendant does not appear to contest the existence of the remaining alleged defects, nor their coverage by the Limited Warranty. (Def.'s Br. at 22–23.) These remaining defects are the misaligned door to the cargo compartment, the fender vibration, the ungluing of the wallpaper, and the mismatched wood on the medicine cabinet. Rather, defendant argues that the remedy plaintiffs seek is inappropriate. (*Id.*) In other words, as to the breach of written warranty claim itself, defendant has failed to meet its burden on summary judgment of asserting the basis for its motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). Indeed, defendant has not shown the Court "that there is an absence of evidence to support the nonmoving party's case" as to this claim. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The Court, therefore, concludes that plaintiffs' breach of written warranty claim with respect to these alleged defects survives defendant's motion for summary judgment.

Accordingly, the Court **DENIES** defendant's Motion for Summary Judgment [27]

as to the breach of written warranty claim brought pursuant to the MMWA, except for allegations of defective brakes or suspension.

### 3. Implied Warranty Claims Based on the MMWA

Plaintiffs have alleged that defendant breached the implied warranties of merchantability and fitness for a particular purpose [3], since the RV was of insufficient quality. (Compl., attach. as Ex. A to Def.'s Br. [27], at ¶ 38.) Defendant argues that plaintiffs' implied warranty claims must be decided under Arizona state law. (Def.'s Br. [27] at 14.) Moreover, since Arizona law requires vertical privity for such claims and there is no such privity here between plaintiffs and defendant, defendant argues it is entitled to summary judgment. (*Id.*)

Section 2301(7) of the MMWA instructs that implied warranties are those arising under state law. Plaintiffs argue that a defense based on privity thwarts Congress' intent in passing the MMWA. (Pls.' Mem. at 9–10) However, Congress expressly provided that implied warranties be supplied by state law. 15 U.S.C. § 2301(7). This Court has already concluded that the relevant state law for this case is Arizona law. Accordingly, the Court must look to Arizona law on implied warranties in deciding whether plaintiffs' implied warranty claims are viable.

█ Defendants cite to Arizona state court opinions for the proposition that only plaintiffs in vertical privity with a defendant are permitted to enforce the implied warranties of merchantability and fitness.

(Def.'s Br. at 15–16) (citing *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210, 210 (1981); *Flory v. Silvercrest Industries, Inc.*, 129 Ariz. 574, 633 P.2d 383, 387 (1981); *Bailey v. Montgomery Ward & Co.*, 6 Ariz.App. 213, 431 P.2d 108 (1967).) Plaintiffs, first, contest the applicability of Arizona law. (Pls.' Mem. [30] at 7.) As discussed, *supra*, Arizona law governs this case. Second, plaintiffs argue that defendant's privity argument would fail in Arizona. (*Id.* at 7–9.) In support of this argument, plaintiffs rely on *Flory* and *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984). However, these cases do not support plaintiffs' position. First, the court in *Flory* upheld the privity requirement. 633 P.2d at 387. The language quoted by plaintiffs goes to the absence of a privity requirement for claims not based on the UCC. (Pls.' Mem. at 7 (quoting *Flory*, 633 P.2d at 388.).) The court stated that privity of contract was not required for claims alleging personal injury. *Flory*, 633 P.2d at 388. Here, though, plaintiffs have alleged breaches of the implied warranties of merchantability and fitness, two implied warranties in the UCC and in Arizona's codification of the UCC. Ariz.Rev.Stat. §§ 47–2314; 47–2315. Plaintiffs' reliance on *Richards v. Powercraft Homes, Inc.* is similarly misplaced. There, the implied warranty at issue was the implied warranty of habitability, which is *not* a UCC-created implied warranty. Therefore, the Court's distinguishing of *Flory* and its public policy argument are inapplicable to the facts in this case.

█ Finally, plaintiffs argue that agency principles and advertising allow the

---

**3.** While the Complaint only mentions the implied warranty of merchantability by name, it appears to the Court that plaintiffs are also claiming a breach of the implied warranty of fitness for particular purpose.

Court to find that vertical privity exists between plaintiffs and defendant. However, plaintiffs fail to cite to any case, from any court, holding that agency principles create vertical privity between a buyer and a manufacturer. Plaintiffs cite only to a comment in the Restatement (Second) of Agency, asking this Court to give it "great weight." (Pls.' Mem. at 11.) As to the advertising argument, the case on which plaintiffs rely merely recognizes that courts in two other states allowed advertising to create vertical privity; that court did not adopt or reject the holding of those other courts, focusing instead on the fact that those cases did not hold that advertising created vertical privity for implied warranty purposes for damages occurring after the product left the manufacturer. *King v. O'Rielly Motor Co.*, 16 Ariz.App. 518, 494 P.2d 718, 723 (1972).

In essence, plaintiffs have pointed to no Arizona law indicating that the state does not require vertical privity for breach of the implied warranties of merchantability and fitness, and the Court has found none. Therefore, because Arizona law applies to this case and because Arizona law requires privity for suits alleging breach of the implied warranties of merchantability and fitness, the Court concludes that it must **GRANT** defendant's Motion for Summary Judgment as to any claim alleging breach of such warranties.

### D. Revocation of Acceptance Claim

Defendant argues that there can be no revocation of acceptance under either Arizona or Georgia law because there is no privity of contract between plaintiffs and defendant. (Def.'s Br. at 14–17) (citing Ariz.Rev.Stat. § 47–2608; O.C.G.A. § 11–2–608; *Seekings*, 638 P.2d at 215, 219; *Sofet v. Roberts*, 185 Ga.App. 451, 452–53,

364 S.E.2d 595, 596–97 (1987).) Defendant also argues that revocation of acceptance is not an appropriate remedy because the Limited Warranty expressly limits remedies to repair or replacement of defective parts. (*Id.* at 18 (citing § 2 of Limited Warranty, attach. as Ex. B to Def.'s Br. [27] ).) Moreover, according to defendant, even if revocation was a permissible remedy, the uncontested defects do not justify revocation as a matter of law, as the cost of repairing these defects is too low, in comparison with the value of the vehicle (less than one percent), to allow revocation. (Def.'s Br. at 22–23) (citing *Jones v. Fleetwood Motor Homes*, 127 F.Supp.2d 958 (N.D.Ill.2000).)

Plaintiffs counter that the cost of the repairs as compared to the value of the vehicle is irrelevant. (Pls.' Mem. at 21.) Moreover, plaintiffs distinguish the case relied on by defendant, arguing it addressed the loss of value from not being in possession of the vehicle, rather than the loss of value from not being able to use the vehicle because of defects. (*Id.*) Plaintiffs argue that the appropriateness of revocation of acceptance as a remedy is question for the jury. (*Id.* at 22 (citing *Griffith v. Stovall Tire & Marine Inc.*, 174 Ga.App. 137, 329 S.E.2d 234, 236 (1985)).)

█ Assuming that plaintiffs are correct to argue that revocation of acceptance is a jury question, plaintiffs have cited to no authority whereby a court allowed a plaintiff to seek such a remedy in the absence of privity of contract. The MMWA allows for replacement of the consumer good if the warrantor is unable to repair the item after having been given a reasonable number of attempts to do so. 15 U.S.C. § 2304. However, this provision applies only to full warranties. In this case, plaintiffs have only their breach of

written warranty claim remaining. Even though revocation of acceptance can be a breach of warranty remedy, this Court has found no case applying either Arizona or Georgia warranty law allowing a plaintiff to seek such a remedy against a manufacturer with whom the plaintiff is not in privity of contract. Moreover, plaintiffs have cited to none. Revocation of acceptance has the effect of returning the buyer and seller to the positions they were in before the transaction; allowing a buyer to pursue this remedy against the manufacturer, rather than the seller, does not achieve this result. If revocation of acceptance is the remedy plaintiffs ultimately desired, then they needed to file suit against the *seller*, the party with whom they are in privity.

Because there is no privity of contract between plaintiffs and defendant, the Court concludes that it must GRANT defendant's Motion for Summary Judgment as to this count of the complaint.

### E. Consequential and Incidental Damages

Finally, defendant argues that plaintiffs are barred from seeking consequential and incidental damages, as the Limited Warranty explicitly excluded such damages. (Def.'s Br. at 23.) Defendant argues that both Georgia and Arizona law allow parties to limit contract remedies in this manner. (*Id.*) (citing *Flanigan v. Executive Office Centers, Inc.*, 249 Ga.App. 14, 546 S.E.2d 559 (2001); *Imaging Systems Int'l v. Magnetic Resonance Plus*, 227 Ga.App. 641, 490 S.E.2d 124 (1997); *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984).) Plaintiffs counter that defendant's disclaimer of consequential and incidental damages is ineffective,

as the Limited Warranty has failed its essential purpose. (Pls.' Mem. at 23–25 (citing O.C.G.A. § 11–2–719(2)).) Plaintiffs argue that defendant, through its limited warranty, promised to repair or replace defective parts; defendant has failed to so repair or replace and now seeks to shield itself from liability by relying on this disclaimer of remedies. (*Id.* at 25.) As the Court has already decided that Arizona law applies in this case, plaintiffs' reliance on Georgia law is of no avail.

However, section 47–2719(B) of the Arizona code contains similar language. Ariz.Rev.Stat. § 47–2718(b). The Court, then, will look to Arizona law in determining whether plaintiffs are barred from seeking consequential and incidental damages. An example of a remedy that fails its essential purpose is one

> that provides for the repair or replacement of defective parts. Implicit in the terms of the contract is the presumption that the defect can be cured by replacement or repair. If this presumption fails, either because the product is so deficient it cannot be fixed or the warrantor fails to replace or repair the part, the remedy has failed.

*Southwest Pet Products, Inc. v. Koch Industries, Inc.*, 107 F.Supp.2d 1108, 1115–16 (D.Ariz.2000) (applying Arizona law) (citing *Kalil Bottling Co. v. Burroughs Corp.*, 127 Ariz. 278, 619 P.2d 1055 (1980); *Roberts v. Morgensen Motors*, 135 Ariz. 162, 659 P.2d 1307 (1982)). At this stage in the litigation, plaintiffs have proffered evidence of defects that defendant has not repaired. Defendant has not addressed plaintiffs' argument that the warranty has failed its essential purpose, instead choosing to argue that general contract rules allow for disclaimer of remedies. However, plaintiffs purchased the RV believing it

to be subject to a warranty, however limited. It is not unreasonable for plaintiffs to have assumed that the warrantor would repair or replace any parts found defective. Failure to do so results in plaintiffs, the party occupying the inferior negotiating position, not receiving the benefit of their bargain, something with which general contract principles are concerned. The Court is unpersuaded by defendant's argument.

The Court, therefore, **DENIES** defendant's Motion for Summary Judgment on plaintiffs' claim for consequential and incidental damages.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** defendant's Motion for Summary Judgment [27] AND **DENIES** plaintiff's Motion for Oral Argument on defendant's motion for summary judgment [29].