992 So.2d 319 (2008)
Richard OCANA, Appellant,
v.
FORD MOTOR COMPANY, et al., Appellees.
No. 3D07-82.
District Court of Appeal of Florida, Third District.
October 1, 2008.
Rehearing Denied October 31, 2008.
*321 Consumer Legal Services and Aldo Bolliger, Richard A. Denno, Kurt D. Mitchell and Jessica M. Miles, Tampa, for appellant.
Bromagen & Rathet, Brooks Rathet, William L. Bromagen and Danielle Robinson, Fort Lauderdale, for appellee, Ford Motor Company.
*322 Before GREEN, SHEPHERD, and LAGOA, JJ.
SHEPHERD, J.
We have for review the dismissal with prejudice of a complaint for breach of express and implied warranty, brought under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301-2312 (1976) (MMWA or the Act), by automotive vehicle lessee, Richard Ocana, against his leasing dealership, Warren Henry Automobiles, Inc., and the manufacturer, Ford Motor Company. The trial court dismissed the complaint against Warren Henry on the ground that Warren Henry did not extend an express written warranty to Ocana, and that Warren Henry properly had disclaimed all implied warranties. The court dismissed Ocana's express warranty claim against Ford Motor Company for failure of Ocana to state a cause of action, and the implied warranty claim on the ground of lack of privity under state law. Our study of the trial court order and the relevant law leads us to affirm the decision.

FACTUAL AND PROCEDURAL HISTORY
On August 3, 2005, Ocana entered into an agreement to lease a new 2006 Land Rover from Warren Henry for thirty-six months. The vehicle was delivered with a New Vehicle Limited Warranty from the manufacturer, Ford Motor Company. Subject to certain exclusions, the warranty covered the vehicle for four years or 50,000 miles, whichever came first. It entitled Ocana to repairs and part replacements to correct defects in materials or workmanship at no cost whenever he brought the vehicle to an authorized repair facility during the repair period.
The lease agreement contained no warranty. Instead, in Paragraph 12, the lease contained the following disclaimer:

WARRANTIES
If the vehicle is new, it is covered by the standard manufacturer's new vehicle warranty.... We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.
You expressly agree and understand that you have selected and agreed to lease the Vehicle "AS IS." WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER.
One year after Ocana entered into the lease, he sued both Warren Henry and Ford. Ocana alleged he had returned the vehicle to the dealership for repairs at least four times. Although the reasons are not explained in the recordwhether dealer request or lessee failure to return for the vehiclethe four sets of Warren Henry repair records attached by Ocana to the complaint reflect that the vehicle remained at the dealership for forty-two of the approximately 365 days between the date Ocana took possession and filing suit. On the other hand, there is no allegation in the complaint that Ford either refused to repair the vehicle or otherwise failed to adequately repair the vehicle under the warranty at any time. Instead, as told to us and to the trial court below, the gravamen of the complaint in this case is that "Ford Motor Company and Warren Henry Automobiles[,] Inc. breached their express and implied warranties [under the MMWA] by failing to repair the vehicle within a reasonable amount of time or *323 reasonable number of repair attempts" within the meaning of section 2304 of the MMWA. The trial court concluded this focus of the complaint was insufficient to prosecute a MMWA claim for breach of a limited warranty, and, upon counsel's representation that he did not desire to amend his complaint on this or any other ground, dismissed the complaint with prejudice as to Ford. The dismissal of Warren Henry followed, albeit on different bases.

A. Ocana Has Failed to State a Cause of Action Against Ford Motor Company for Breach of Limited Express Warranty or Implied Warranty.

1. The Limited Express Warranty
The MMWA is designed principally to require certain disclosures with respect to written warranties to protect consumers from deceptive warranty practices arising out of state Uniform Commercial Code warranties. The Act does not wholly supplant the state Uniform Commercial Code. See Mesa v. BMW of N. Am., LLC, 904 So.2d 450, 455 (Fla. 3d DCA 2005). Nor does the Act require a manufacturer or seller to extend a written warranty with its product. 15 U.S.C. § 2302(b)(2). However, if a manufacturer or seller does so, it must "conspicuously" label the warranty "full" or "limited." 15 U.S.C. § 2303(a)(1), (2). Apparently, the Congress believed that forcing all consumer product warranties (with insignificant exceptions) into one of these two categories would, over time, beget a fixed meaning for each in the minds of consumers, enabling them to make more intelligent decisions. See 1 James J. White & Robert S. Summers, Uniform Commercial Code § 9-19 (5th ed. 2000). Finally, the Act creates a federal private cause of action for consumers damaged by the failure of a warrantor to comply with any obligation under a written warranty. 15 U.S.C. § 2310(d)(1).
If a written warranty meets certain "Federal minimum standards," the Act requires that it be labeled "a full (statement of duration) ... warranty." 15 U.S.C. § 2303(a)(1). The Federal minimum standards require the following of warrantors:
(1) such warrantor must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty;
(2) [S]uch warrantor may not impose any limitation on the duration of any implied warranty on the product;
(3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and
(4) if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be).
15 U.S.C. § 2304(a).
In contrast, the Act is virtually silent with respect to the imposition of requirements on manufacturers or sellers who issue a "limited" warranty. The only prescribed requirement is that such a warranty may not disclaim or limit the duration of an implied warranty to a period shorter than the duration of the express warranty. 15 U.S.C. § 2308(b). Therefore, the question whether a warrantor has committed a breach of a limited express warranty under the Act is governed by state law. Mesa, 904 So.2d at 455 ("With regard to warranties on consumer products, *324 the MMWA modifies the applicability and operation of the UCC and, to the extent applicable, supersedes inconsistent provisions of the UCC."); see also Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C.Cir.1986) ("[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."); Razor v. Hyundai Motor Am., 222 Ill.2d 75, 305 Ill.Dec. 15, 854 N.E.2d 607, 614 (2006) ("The Act does supersede state law, but only to the extent that state law is inconsistent with the Act.").[1] Under this state's law, there can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms. See § 672.313, Fla. Stat. (2006); Chaurasia v. Gen. Motors Corp., 212 Ariz. 18, 126 P.3d 165, 169 (2007).
The limited express warranty before us provides that Ford will pay for repairs needed to correct defects in materials and workmanship: "[Ford[2]] warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, repairs required to correct defects in factory-supplied materials or factory workmanship will be performed without charge upon presentment for service[.]" To recover for a breach of this warranty, a warrantee therefore must allege and prove that Ford refused or failed to adequately repair a covered item. Here, Ocana alleged only that "PLAINTIFF has taken the VEHICLE to the MANUFACTURER'S seller/agent on at least four (4) separate occasions." There is no allegation Ford did not comply with a provision of the express warranty. See Chaurasia, 126 P.3d at 169.
Rather than follow this more traditional pleading pathway, Ocana elected to seek to impose liability on Ford in this case by legally engrafting the Federal minimum standards applicable to "full (statement of duration) ... warrant[ies]" found in section 2304(a) of the MMWA, see supra p. 5, onto all written warranties. In particular, Ocana sought below and reiterates here that he seeks to proceed on the basis of section 2304(a)(4), the so-called "reasonable number of repair attempts provision," which states that:
if the product ... contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be).
15 U.S.C. § 2304(a)(4). In support of this position, Ocana employs the plain language of the Act, and two cases issued by the Fourth District Court of Appeal, Rentas v. DaimlerChrysler Corp., 936 So.2d 747 (Fla. 4th DCA 2006), and Gates v. Chrysler Corp., 397 So.2d 1187 (Fla. 4th DCA 1981). We disagree with Ocana on this argument. The plain language of the Act does not engraft the standards and remedies of section *325 2304 to "all warranties" as argued by Ocana. Section 2304 is entitled "Federal minimum standards for warranties." As noted in the Act itself, those warranties that meet the Federal minimum standards are "full" warranties, and those that do not, are "limited" warranties. To accept Ocana's argument would obliterate the careful distinction the Congress established between the two categories of warranties.
We acknowledge that the Fourth District Court of Appeal in Gates stated that "a cause of action exists under Magnuson-Moss where there has been a breach of warranty which has not been remedied although the warrantor has been given a reasonable opportunity to cure the breach." Gates, 397 So.2d at 1189 (citing 15 U.S.C. § 2304(a)(1)). However, we note a complete lack of analysis in the opinion concerning the circumstances under which section 2304 may be applied, including especially no consideration of the textually obvious differentiation made by the Congress between "full" and "limited" warranties found in the plain language of the Act. We also find no support of Ocana's position in Rentas.
In contrast to Gates, we find that the majority of the courts around the country that have considered the issue have, in thorough and well-reasoned decisions, refused to apply the "reasonable number of attempts" requirement when the plaintiff holds a limited express warranty. See, e.g., Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir.2004); Milicevic v. Fletcher Jones Imps., Ltd., 402 F.3d 912, 919 n. 4 (9th Cir.2004); MacKenzie v. Chrysler Corp., 607 F.2d 1162, 1166 n. 7 (5th Cir.1979); Owens v. Mercedes-Benz USA, LLC, 541 F.Supp.2d 869, 874 (N.D.Tex.2008); Lambert v. Monaco Coach Corp., No. 804CV608T30TBM, 2005 WL 1227485, at *4 (M.D.Fla. May 24, 2005); Gilbert v. Monaco Coach Corp., 352 F.Supp.2d 1323, 1330 (N.D.Ga.2004); Chaurasia, 126 P.3d at 170. We consider Gates to be an outlier, and, so far as we (and apparently Appellant's counsel) can determine, the only decision contrary to the overwhelming weight of authority available for consideration from other courts all over the United States. We hold that the standards and remedies in section 2304 do not apply to the express limited warranty in this case.
Because Ocana erroneously elected to confine his limited express warranty claim for recovery to rise or fall on the basis of whether section 2304 is incorporated into express limited warranties, we affirm the dismissal with prejudice of this count of his complaint.

2. The Implied Warranty Claim
Just as the MMWA creates in a consumer the right to pursue a civil action for breach of a written warranty in a court of competent jurisdiction, 15 U.S.C. § 2310(d)(2), so also does the Act in the same subsection authorize a federal cause of action for breach of an implied warranty. Id.; Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 525 (7th Cir.2003); Schimmer, 384 F.3d at 405. The remedy, however, is governed by state law. See Walsh, 807 F.2d at 1012; Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 248-49 (2d Cir.1986). Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty. Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla.1988); Weiss v. Johansen, 898 So.2d 1009 (Fla. 4th DCA 2005); Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So.2d 968 (Fla. 5th DCA 1994). The MMWA does not supplant state law privity requirements for implied warranty claims. Mesa, 904 So.2d at 458. Recognizing this obstacle, Ocana alleges that Warren Henry *326 is a Ford agent. On the facts alleged in the complaint, which again Ocana declined an opportunity to amend, we conclude Ocana cannot execute an end-run around Florida's historic privity requirement by employing principal-agent theory in this case.
"Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal...." Karl Rove & Co. v. Thornburgh, 39 F.3d 1273, 1296 (5th Cir.1994). To demonstrate that Warren Henry is the real or actual agent of Ford, Ocana would have to allege and ultimately prove: 1) acknowledgement by Ford that Warren Henry was acting as its agent; 2) acceptance of the undertaking by Warren Henry; and 3) control by Ford over Warren Henry's day-to-day activities during the course of the agency. See Goldschmidt v. Holman, 571 So.2d 422, 424 n. 5 (Fla.1990). The allegations of the complaint in this case, as they relate to actual agency, fall far short of those necessary to establish a principal-agent relationship between Ford and Warren Henry. Construing the relevant allegations in the light most favorable to Ocana, see Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 206 (Fla. 3d DCA 2003) ("When determining the merits of a motion to dismiss, the trial court's consideration is limited to the four corners of the complaint, the allegations of which must be accepted as true and considered in the light most favorable to the nonmoving party."), Ocana alleges merely that Ford, as the manufacturer, exercises control over: 1) dealer location, size, and number of dealer logos on dealer's premises; 2) prizes given to dealer's employees; 3) number of bathrooms dealer must make available to the public; 4) training and certification of sales and service personnel; and also requires that its dealers 5) use manufacturer-supplied computer software; 6) report vehicle sales and sale details, including name and address of purchaser and related information, to manufacturer; 7) provide warranty service paid for by Ford Motor Company; and 8) afford Ford the right to enter the dealer's business premises to audit the records and operations of the dealership as to sales and service. The complaint is devoid of any allegation of some of the tell-tale signs of a principal-agent relationship, such as the ability of the principal to hire, fire, or supervise dealership employees or dealer ownership. We find the facts alleged by Ocana in his complaint to be remarkably similar to those alleged in Ortega v. General Motors Corp., 392 So.2d 40, 42 (Fla. 4th DCA 1980). Taking the allegations in a light most favorable to Ocana, we conclude that even if uncontroverted evidence of each was offered at trial, the allegations neither individually nor collectively support the existence of an agency relationship between Ford and Warren Henry. See id.
We reach the same conclusion with respect to Ocana's apparent agency contention. Apparent agency exists only if each of the following three elements is present: 1) a representation by the purported principal; 2) reliance on that representation by a third party; and 3) a change in position by the third party in reliance on the representation. Mobil Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla.1995). "`Apparent authority' does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, `apparent authority' exists only where the principal creates the appearance of an agency relationship." Izquierdo v. Hialeah Hosp. Inc., 709 So.2d 187, 188 (Fla. 3d DCA 1998) (quoting Spence, Payne, Masington & Grossman, P.A. v. Philip M. *327 Gerson, P.A., 483 So.2d 775, 777 (Fla. 3d DCA 1986)).
Here, there is no evidence that the purported principal, Ford Motor Company, made any representation to Ocana, the purported third party. Ocana does not urge otherwise. Rather, Ocana grounds his apparent agency argument on allegations similar to those made in the actual agency portion of his complaint, namely that Ford permitted Warren Henry to hold itself out as an "authorized dealer; display Ford logos and other Ford Motor Company prepared advertising materials on its premises; trained Warren Henry personnel and provided them with technical bulletins; and required automobile purchasers to seek redress of warranty issues in the first instance from the dealer. Based upon these allegations, Ocana finally alleges he had the right to "reasonably conclude[ ] that DEALER was an agent of MANUFACTURER." We find the allegations insufficient. See Izquierdo, 709 So.2d at 188.
Ocana has no state law implied warranty claim prosecutable against Ford under the MMWA.

B. Ocana Has Failed to State a Cause of Action Against Warren Henry Automobiles, Inc. for Breach of Express or Implied Warranty
Ocana's challenge to the dismissal of his claims against Warren Henry Automobiles, Inc. can be summarily dispatched. Ocana entered into an "AS IS" lease with Warren Henry. The lease also expressly disclaimed all express or implied warranties with respect to the vehicle. Ocana makes no argument that the disclaimer was not clearly and conspicuously placed in the lease agreement or that the agreement or provision in question is invalid due to fraudulent representation or other unlawful act by Warren Henry.
"Where a contract contains an agreement to buy something `as is,' causation is generally negated as a matter of law." Owens, 541 F.Supp.2d at 871 (citing Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995)). "The theory behind this rule is `[t]hat the sole cause of a buyer's injury in such circumstances, by his own admission, is the buyer himself. He has agreed to take the full risk of determining the value of the purchase.'" Owens, 541 F.Supp.2d at 871 (quoting Prudential, 896 S.W.2d at 161). Moreover, Warren Henry's acknowledgment to its customer that the Land Rover in this case was "covered by the standard manufacturer's new vehicle warranty," together with its assignment of "all rights we have" under the warranty, found in the "WARRANTIES" provision of the lease, see supra p. 3, does not constitute an adoption by Warren Henry of the limited express warranty as its own. See Frank Griffin Volkswagen, Inc. v. Smith, 610 So.2d 597, 601 (Fla. 1st DCA 1992) (holding that where a dealer intends to disclaim a warranty or refuses to incorporate by reference in its retail buyer's order, installment contract, or lease, a manufacturer's warranty, the dealer is not a co-warrantor).
We conclude the trial court properly dismissed Ocana's complaint against Warren Henry Automobiles, Inc. with prejudice.
Affirmed.
NOTES
[1] For practical purposes, the chief benefit to a consumer to cast a limited express consumer product warranty claim as a MMWA claim is the potentiality of an attorney fees award. See 15 U.S.C. § 2310(d)(2). Unless modified by local law, the Uniform Commercial Code does not afford a prevailing consumer an award of attorney fees on a breach of express warranty claim brought under the Code. Florida has not thus modified its Code provisions. See Ch. 672, Fla. Stat. (2006).
[2] The warranty actually states it is given by Land Rover North America, Inc. Because the parties do not contest that Ford Motor Company is the party required by the warranty to respond, neither do we.