Bruce S. **BEAL**, Plaintiff,

v.

**GENERAL MOTORS CORPORATION**, a corporation of the State of Delaware, and Watkins System, Inc. t/a Watkins Truck Sales & Service, a corporation of the State of Delaware, Defendants.

Civ. A. No. 4288.

United States District Court,
D. Delaware.

Jan. 22, 1973.

---

* In light of the dismissal of the complaint, plaintiffs' motions for discovery and class determination are moot.

**424**

L. Vincent Ramunno, Wilmington, Del., for plaintiff.

Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, Del., for defendant General Motors Corporation.

George Tyler Coulson, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant Watkins System, Inc.

## MEMORANDUM OPINION

STAPLETON, District Judge:

In this diversity action Bruce Beal, a Maryland resident, seeks damages from General Motors Corporation, a Delaware corporation, and Watkins System, Inc., also a Delaware corporation, for breach of contract and, in the alternative, for negligence. Jurisdiction is proper under 28 U.S.C. § 1332.

The matter is now before the Court on a motion by General Motors to strike various allegations of the amended complaint as immaterial, F.R.Civ.P. 12(f), to dismiss certain allegations for failure to state a claim, F.R.Civ.P. 12(b)(6), and for a more definite statement, F.R.Civ.P. 12(e). Defendant Watkins has moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted.

The facts, as set out in the amended complaint, need only be briefly outlined here. In August 1968, Mr. Beal purchased a GMC extra-heavy tonnage diesel tractor through Watkins, an authorized General Motors' dealer. The "Re-

tail Order Form" pursuant to which the purchase was consummated provided in part:

10. There are no warranties, expressed or implied, made by either the Dealer or the Manufacturer on new GMC motor vehicles, chassis or parts furnished under this Order except the Manufacturer's Warranty against defects in material and workmanship set out below:

GMC Trucks & Coach Division of General Motors Corporation, as Manufacturer, warrants each new motor vehicle and chassis including all equipment and accessories thereon (except tires and tubes) manufactured or supplied by GMC Truck & Coach Division and delivered to the original retail purchaser by an authorized GMC Truck Dealer, to be free from defects in material and workmanship under normal use and service; GMC Truck & Coach Division's obligation under this warranty being limited to repairing or replacing at its option any part or parts thereof which shall, within twenty-four (24) months after delivery of such vehicle or chassis to the original retail purchaser or before such vehicle or chassis has been driven twenty-four thousand (24,000) miles, whichever event shall first occur, be returned to an authorized GMC Truck Dealer at such Dealer's place of business and which examination shall disclose to Manufacturer's satisfaction to have been thus defective. The repair or replacement of defective parts under this warranty will be made by such Dealer without charge for parts, and if made at such Dealer's place of business, without charge for labor." . . .

In its Opinion of July 20, 1972, this Court held that the contract between the parties excluded all express or implied warranties except the warranty set out above.

In his amended complaint plaintiff alleges that this warranty was breached, specifies a host of defects, and asserts that General Motors was unable or unwilling to repair or replace the offending parts in such a way as to make the vehicle operable. His claim for damages includes a claim for profits lost as a result of his inability to utilize the truck in his business.

### FAILURE OF THE LIMITED REMEDY

The major legal issue presented by defendant General Motors' motion to strike is whether consequential damages may be recovered upon proof of a breach of the express warranty relied upon. If as a matter of law they may not, defendant argues, then allegations in the amended complaint which relate only to that claim should be stricken as immaterial.

The Delaware version of the Uniform Commercial Code clearly permits the type of limitation of remedy contemplated by this contract. Section 2–719 of Title 5A of the Delaware Code provides:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie uncon-

scionable but limitation of damages where the loss is commercial is not.

It, therefore, appears that the limitation of remedy contained in the contract is valid, and consequential damages are not recoverable unless the limitation is unconscionable or, on these facts, fails of its essential purpose. If either situation is found "remedy may be had as provided in this title," § 2–719(2), including, a proper case, consequential damages. §§ 2–714, 2–715.[1]

■ The purpose of an exclusive remedy of replacement or repair of defective parts, whose presence constitute a breach of an express warranty, is to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise. From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered. When the warrantor fails to correct the defect as promised within a reasonable time he is liable for a breach of that warranty. Steele v. J. I. Case Co., 197 Kan. 554, 419 P.2d 902 (Kan. 1966); Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (Cal.1965). The limited, exclusive remedy fails of its purpose and is thus avoided under § 2–719(2), whenever the warrantor fails to correct the defect within a reasonable period.

The situation here is like that which confronted the court in Jones & McKnight Corp. v. Birdsboro Corporation, 320 F.Supp. 39 (N.D.Ill.1970). There Judge Will analyzed the problem in terms of repudiation of the seller's duties under the warranty which resulted in a failure of the exclusive remedy to achieve its purpose:

. . . Although the plaintiff-buyer purchased and accepted the machinery and equipment with the apparent knowledge that the seller had properly limited its liability to repair or replacement, and although the plaintiff does not allege any form of unconscionability in the transactions which led to the purchase, plaintiff also was entitled to assume that defendants would not be unreasonable or wilfully dilatory in making good their warranty in the event of defects in the machinery and equipment. It is the specific breach of the warranty to repair that plaintiff alleges caused the bulk of its damages. This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid. If the plaintiff is capable of sustaining its burden of proof as to the allegations it has made, the defendant will be deemed to have repudiated the warranty agreement so far as restricting plaintiff's remedies, and the exclusive remedy provision of the contract will be deemed under the circumstances to have failed of its essential purpose,

---

1. § 2–714. Buyer's damages for breach in regard to accepted goods

   (1) * * *

   (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

   (3) In a proper case any incidental and consequential damages under the next section may also be recovered.

§ 2–715. Buyer's incidental and consequential damages

   (1) * * *

   (2) Consequential damages resulting from the seller's breach include

   (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

   (b) injury to person or property proximately resulting from any breach of warranty.

thus allowing plaintiff the general array of remedies under the Code.[2]

General Motors here argues that there is no failure in essential purpose because recovery by the buyer of the difference in market value of a truck free of defects and the truck actually delivered will give the buyer everything he had a right to expect under the contract. The logic urged in support of this argument is flawed, however.

Defendant concedes that plaintiff is entitled to direct damages measured by market values. What is it, however, that gives him this remedy? It is clearly not the contract, for it purports to substitute a right of replacement and repair for any right to damages. Rather, the right to direct damages arises from § 2–714(2) of the Uniform Commercial Code. But where the parties expressly provide for an exclusive remedy "in substitution for" the "measure of damages recoverable under" the Code, that remedy is the buyer's sole recourse. § 2–719. The direct damage remedy of § 2–714(2), therefore, is applicable only when the exclusive remedy provided in the contract fails of its essential purpose within the meaning of § 2–719(2). Under that section when such a failure occurs recourse may be had to all the remedial provisions of the Code. There is no discernible reason for limiting that recourse to selected remedial provisions as defendant apparently attempts to do. The direct damages section, § 2–714(2), has no greater claims to application here than does the consequential damages section, § 2–714(3), assuming, of course, that this is otherwise "a proper case" for consequential damages.

While this Court is unable to hold that consequential damages are not recoverable in this case, neither may it be determined at this preliminary stage whether such damages will be recoverable if liability is established.

Few courts have spoken to the question what is a "proper case" for the award of consequential damages within the contemplation of § 2–714(3). The Pennsylvania Supreme Court in the case of Keystone Diesel Engine Company v. Irwin, 411 Pa. 222, 191 A.2d 376 (1963) relied on pre-Code common law principles in holding that:

"Special circumstances" entitling the buyer to damages in excess of the difference between the values as warranted and the value as accepted exist where the buyer has communicated to the seller at the time of entering into the contract sufficient facts to make it apparent that the damages subsequently claimed were within the reasonable contemplation of the parties. Wolstenholme, Inc. v. Jos. Randall & Bro., 295 Pa. 131, 144 A. 909 (1929).

. . .

In the *Birdsboro* case this test was construed as requiring a tacit agreement that consequential damage would be recoverable:

. . . Under Pennsylvania interpretation of the general Code provisions dealing with damages, therefore, the plaintiff, in order to collect damages in excess of the difference between the value of the goods as warranted and as accepted, must prove that the seller was on notice of the fact that the plaintiff would hold it responsible for any loss of profit or loss due to "down time" arising from the inability to use the machinery and equipment in question. Jones & McKnight Corp. v. Birdsboro Corporation, 320 F.Supp. 39, 45 (N.D.Ill. 1970).

The "tacit agreement" concept has elsewhere been rejected, however. In the Illinois case of Adams v. J. I. Case Co., 125 Ill.App.2d 388, 261 N.E.2d 1 (1970), the court, relying on the statuto-

---

2. The limited remedy fails of its purpose whenever the seller fails to repair the goods within a reasonable time; good faith attempts to repair might be relevant to the issue of what constitutes a reasonable time. However, since § 2–719(2) operates whenever a party is deprived of his contractual remedy there is no need for a plaintiff to prove that failure to repair was willful or negligent.

ry language of § 2–715(2)[3] opted for a different test:

> . . . In their Official Comment upon UCC 2–715(2) its framers make it clear that the "tacit agreement" test for the recovery of consequential damages is rejected. The language of that section should not be so narrowly construed as to require a prior understanding or agreement that the seller would be bound for consequential damages in the event of his breach. If that is the holding . . . of Keystone . . . it must be rejected. The Official Comment further states that the older Common Law rule which made the seller liable for all consequential damages of which he had "reason to know" in advance is followed, modified to require reasonable prevention of loss by cover or otherwise. The Code provision and the Official Comment makes it clear that strictures are not to be applied to the plain meaning of the Code by adherence to what the parties may have agreed or contemplated at the time of sale. . . .

■ In this diversity case the court is, of course, bound to follow the law of Delaware. However, no Delaware court has passed on the question of what is a "proper case" for the award of consequential damages under §§ 2–714 and 2–715. In this circumstance, this Court is bound to apply the rule that it believes the courts of Delaware would apply if presented with the issue. Stool v. J. C. Penney Co., 404 F.2d 562 (5th Cir. 1968); Costello v. Schmedlin, 404 F.2d 87 (3rd Cir. 1968).

■ Based upon the "had reason to know" language of § 2–715(2) and the Official Comment to that section by its draftsmen, I believe that the Supreme Court of Delaware, if confronted with this question, would adopt the test of the *Adams* case. Under that test, the question then is whether the loss for which recovery is sought is one that results from general or particular requirements or needs of which the seller at the time of contracting had reason to know. If it is, then consequential damages are proper provided that those damages could not have been reasonably prevented by action of the buyer.

The issues of what the parties had reason to know and what actions, if any, plaintiff might reasonably have taken to mitigate his damages present questions which cannot properly be answered at this stage. For present purposes it is enough to state that issues relating to the recovery of consequential damages are still in this case and that defendant General Motors' motion to strike allegations referring thereto (¶¶ 9, 10, 11) and to strike allegations referring to "background" of the contract negotiations (¶ 4) must be denied.[4]

## STATUTE OF LIMITATIONS

■ Both defendants have moved to dismiss on limitations grounds that part of paragraph 11 which alleges negligence in the delivery to plaintiff of an "inherently defective truck."

■ The truck was delivered about August 12, 1968; the original complaint in this action was filed on December 2, 1971, something less than three years and four months later. The relevant Delaware statute of limitations, 10 Del. C. § 8106, provides for a three year limitations period. Plaintiff seeks to avoid

---

3. (2) Consequential damages . . . include
   (a) any loss resulting from the general or particular requirements and needs which the seller at the time of contracting *had reason to know* . . . (emphasis added).

4. Paragraph 4 provides in part:
   That the Plaintiff made known to the Defendant, WATKINS, its agents, servants or employees, his purpose for purchasing a heavy duty Diesel tractor, which he would operate and use for hauling of stone, gravel, sand and other construction materials from the quarries or pits to job sites, in furtherance of Plaintiff's business; . . .

the plain effect of this statute here by arguing that the statute was tolled while this assertedly "latent" defect remained undiscovered. While the Delaware Supreme Court has recognized such a principle in certain personal injury actions governed by 10 Del.C. § 8118, Layton v. Allen, 246 A.2d 794 (Del.1968), the state law is clear that no such principle applies in actions governed by 10 Del.C. § 8106. Mastellone v. Argo Oil Corp., 6 Terry 517, 76 A.2d 118, aff'd, 7 Terry 102, 82 A.2d 379 (Del.1951) (expressly approved by the Supreme Court in the *Layton* decision). The Delaware Supreme Court took care to expressly limit the tolling principle of *Layton* to personal injury cases governed by 10 Del.C. § 8118, Layton v. Allen, *supra*, at 799 of 246 A.2d. The principle announced there has no application to this case. Where a valid limitations defense appears on the face of a complaint dismissal for failure to state a claim under F.R.Civ.P. 12(b)(6) is proper. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954); Taylor v. Houston, 93 U.S.App. D.C. 391, 211 F.2d 427 (D.C. Cir. 1954); Berry v. Chrysler Corp., 150 F.2d 1002 (6th Cir. 1945). Plaintiff's cause of action based on negligent delivery of a defective truck is barred by the applicable state statute of limitations and will be dismissed.

## THE NEGLIGENT REPAIR CLAIM

 Plaintiff purports to allege a cause of action against General Motors and Watkins for negligent repair of the truck.

Defendant Watkins has moved to dismiss this claim. The complaint, in relevant part, avers that "Defendants . . . were negligent in not adequately, correctly and in a workmanship manner repairing the truck as warranted . . . ". Watkins argues that this allegation has as its predicate the words "as warranted" and that "as a consequence, plaintiff's cause of action, if any, based upon failure to repair relates back to [the portion] . . . of the Amended Complaint which sets forth *in haec verba* the express warranty of defendant General Motors."

I agree with defendant Watkins that the terms of General Motors' warranty are irrelevant to the definition of any duty of due care which it may have owed to plaintiff in the repair of his truck. I further agree that the addition of the words "as warranted" serves only to confuse and obscure the issues in this case. Dismissal under Rule 12(b)(6) is not appropriate, however. It is clear from the oral argument that plaintiff sought to allege a cause of action against both defendants for negligent repair and that the phrase "as warranted" is legally irrelevant and immaterial as to both defendants. Accordingly, it will be stricken under Rule 12(f).

Finally, General Motors' motion for a more definite statement will be denied.

Submit order.