619 P.2d 1055

**KALIL BOTTLING COMPANY, a corporation, Plaintiff/Appellee/Cross–Appellant,**

**v.**

**BURROUGHS CORPORATION, a corporation, Defendant/Appellant/Cross–Appellee.**

**No. 2 CA–CIV 3453.**

Court of Appeals of Arizona, Division 2.

Sept. 25, 1980.

Rehearing Denied Nov. 6, 1980.

Review Denied Nov. 25, 1980.

Slutes, Browning, Zlaket & Sakrison, P. C. by Thomas A. Zlaket, Eugene F. Zlaket and A. John Pelander, Tucson, for plaintiff/appellee/cross–appellant.

Miller, Pitt & Feldman, P. C. by James R. Figliulo, Tucson, Brown & Bain, P. A. by Jack E. Brown and George E. Hilty, Phoenix, for defendant/appellant/cross–appellee.

## OPINION

HOWARD, Judge.

Kalil is a soft drink bottler and distributor. In 1969 it decided to computerize its inventory and accounting operations. On July 16, 1969, Kalil signed an "Equipment Sale Contract", agreeing to purchase a computer and software[1] from Burroughs Corporation for $40,168.96 with a down payment of $1,750. The balance was to be financed by Burroughs according to terms and conditions established by Kalil. Burroughs rejected Kalil's application for credit, but not before the computer was installed. Kalil was unable to secure bank financing and on April 30, 1970, National Equipment Rental, Ltd. (National) purchased the computer and software from Burroughs and leased it to Kalil for 66 months with a monthly rental of $862.40.[2] The down payment which Kalil had paid Burroughs was credited by Burroughs on the purchase price paid by National.

On the face of the contract between Burroughs and Kalil was the following provision:

"MAINTENANCE COVERAGE FOR 12 MONTHS APPLIES AS DESCRIBED ON REVERSE SIDE. TERMS AND CONDITIONS ON REVERSE SIDE ARE PART OF *THIS SECURITY AGREEMENT*." (Emphasis added)

The contract terms and conditions specifically warranted the equipment sold to be "free from defects in material and workmanship." The contract stated:

---

1. Software is a computer program encoded on punch cards, tapes or discs or other media in machine–readable form and in written documents in human–readable form.

2. There was no option to purchase in this lease.

"THERE ARE NO UNDER-STANDINGS, AGREEMENTS, REPRE-SENTATIONS, OR WARRANTIES, EXPRESS OR IMPLIED (INCLUDING ANY REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), NOT SPECIFIED HEREIN, RESPECTING THIS CONTRACT OR THE EQUIPMENT HEREUNDER. THIS CONTRACT STATES THE ENTIRE OBLIGATION OF SELLER IN CONNECTWITH (SIC) WITH THIS TRANSACTION."

The contract signed by National and Burroughs stated:

"All guarantees, warranties and service normally accompanying this equipment are to be extended directly to the consignee [Kalil]." (For convenience we shall call this provision 1)

It also contained the following provision:

"Burroughs' acceptance of this order is conditioned upon agreement by the buyer [National] to the standard terms and conditions of Burroughs standard order form for sale of its equipment. Buyer has signified acceptance of this condition through initialing by an authorized representative in margin hereof. Burroughs standard terms and conditions of sale shall prevail." (We shall call this provision 2)

Many problems were encountered by Kalil with the computer system. It malfunctioned and suffered from too much "down time" causing a work backlog at Kalil. Burroughs failed to install all of the programs required in the software addendum to the equipment contract. Sometime in November of 1971 the computer was rendered inoperable for about 10 days which worsened Kalil's already existing backlog. A second machine was installed by Burroughs in an attempt to make Kalil's operations current, but the second machine also suffered from breakdowns.

Finally, when the lease with National expired in 1976, Kalil purchased its own computer from a different manufacturer. In the interim, Kalil had filed this lawsuit on September 11, 1973.

Kalil's claims for relief against Burroughs consisted of counts for breach of contract, breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, negligent misrepresentation, fraud, and consumer fraud. All counts except those for fraud and consumer fraud went to the jury which awarded damages to Kalil in the sum of $401,690. Because the jury was given only one form of verdict to use in the event it found for Kalil, we are unable to determine upon which claim or claims Kalil prevailed.

■ Our review is somewhat frustrated by the posture of the case before the trial court and before us. The theory adhered to by both parties in the trial court and on appeal is that at all times pertinent to the transactions a contract between Kalil and Burroughs was in existence. However, the facts indicate otherwise since the parties' conduct constituted a mutual rescission of the contract when the computer and software was purchased by National and leased to Kalil.[3] *Yale Co–Op Corporation v. Ro-*

---

**3.** This would change the relationship between the parties and require an analysis of the rights and liabilities between them. Kalil is a third–party beneficiary of provision 1 of the National–Burroughs contract but is not bound by provision 2 since it has not agreed to these terms and conditions. Other questions are also raised by this change of legal relationship. What is the effect of the rescission on representations made prior to the Kalil–Burroughs contract? On the effect of a rescission see *E. T. C. Corporation v. Title Guarantee and Trust Company*, 271 N.Y. 124, 2 N.E.2d 284 (1936), reh. den. 271 N.Y. 659, 3 N.E.2d 471; 105 A.L.R. 1003; *Evans v. Brubaker*, 207 Okl. 42, 247 P.2d 511 (1952); *Brandtjen & Kluge, Inc. v. Shonka*, 2 Utah 2d 223, 272 P.2d 155 (1954). On the right to sue for breach of contract after a rescission, see *Rubenstein v. Dr. Pepper Company*, 228 F.2d 528 (8th Cir. 1955); *Haaser v. A. C. Lehmann Company*, 130 Conn. 219, 33 A.2d 135 (1943); 17 Am.Jur.2d Contracts Sec. 516; pp. 1002–03.

Do any implied warranties from the manufacturer extend to Kalil, the lessee from National, despite lack of privity of contract thus giving Kalil a claim for commercial loss? See A.R.S. Sec. 44–2335, Sec. 2–318 of the U.C.C., alternatives A, B and C and Comment 3 thereof. See also Annot. 16 A.L.R.3d 683 at 703 and

*gin*, 133 Conn. 563, 53 A.2d 383 (1947); 17 Am.Jur.2d Contracts Sec. 490, pp. 962–63; 17A C.J.S. Contracts Sec. 388, pp. 461–63; and see, *Cords v. Window Rock School District No. 8, Apache County*, 22 Ariz.App. 233, 526 P.2d 757 (1974); see also Restatement (Second) Contracts Sec. 406, comment *b*.

The general rule that an appellate court will not review a question not raised during the trial, *Town of South Tucson v. Board of Supervisors*, 52 Ariz. 575, 84 P.2d 581 (1938), also applies when the appellate court raises, sua sponte, an issue not litigated below, subject to certain exceptions which are inapplicable here. See *Rubens v. Costello*, 75 Ariz. 5, 251 P.2d 306 (1952). We shall therefore, decide this case on the theory upon which both parties proceeded below. Relying on the case of *Burroughs Corp. v. Chesapeake Petro & Supply Co., Inc.*, 384 A.2d 734 (Md.App.1978), the trial court ruled that the terms and conditions on the reverse side of the "Equipment Sale Contract" were not part of the contract between the parties. The Court of Appeals of Maryland stated that the clause on the front page of the contract, which was the same as the one here, indicated that the terms and conditions on the reverse side were operative only if the document was a security agreement (installment sale contract). We are unable to agree with the reasoning of the Maryland court and find that the trial court erred in its ruling. The "Equipment Sale Contract" was used for both cash sales and installment sales. The parties spent a great deal of time determining whether this was a "security agreement." We need not reach that issue. It does not matter whether the parties called their contract a "security agreement" or a "spotted elephant". The reverse side contains terms and conditions such as an express warranty, an exclusion of certain other warranties and a provision excluding consequential damages. It defies logic and reason to conclude that these provisions

were intended to apply only if the contract was deemed an installment sales contract but not if it were a cash sale. The net effect is that the exclusion of implied warranties on the reverse side of the contract was valid and binding on the parties. Thus, the court erred in submitting the issue of implied warranties to the jury. A.R.S. Sec. 44–2333; *Bakal v. Burroughs Corp.*, 74 Misc.2d 202, 343 N.Y.S.2d 541 (1972) and see Annot. 17 A.L.R.3d 1010 Secs. 25 and 26. Furthermore, since the contract specifically negated the alleged misrepresentations, Kalil's claims for negligent misrepresentation, fraud and consumer fraud, based upon statements made prior to the signing of the contract were not actionable because of the parol evidence rule. A.R.S. Sec. 44–2309; *Sun Lodge, Inc. v. Ramada Development Co.*, 124 Ariz. 540, 606 P.2d 30 (App.1979); *Apolito v. Johnson*, 3 Ariz.App. 358, 414 P.2d 442 (1966). This leaves Kalil with a claim for breach of the warranty concerning freedom from defects in material and workmanship. This warranty applies both to the computer and the software. There is, therefore, also a claim for breach of contract.

The terms and conditions also contained an agreement by Burroughs to exchange any parts shown to have become defective as a result of wear and tear from normal use during one year from the date of delivery, a provision that limited its responsibility to no more than an exchange of equipment under its warranty, and a clause which provided that the purchaser expressly waived all damages, whether direct, incidental or consequential.

Burroughs contends that this waiver of consequential damages precludes Kalil from recovery on any and all of its counts. Contracts with provisions identical to those before us have been interpreted by other courts as constituting valid exclusions of consequential damages in commercial loss cases. *Bakal v. Burroughs Corp.*, supra; *Investors Premium Corp. v. Burroughs*

---

*Davis v. Homasote Company*, 281 Or. 383, 574 P.2d 1116 (1978). As to the requirement of privity of contract in an action for tortious misrepresentation against the manufacturer, see *Ford Motor Company v. Taylor*, 60 Tenn.

App. 271, 446 S.W.2d 521 (1969); *Ford Motor Company v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966); Restatement (Second) of Torts Sec. 552.

282

Corp., 389 F.Supp. 39 (D.C.So.Cir.1974). See also *K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390 (1970). *Dow Corning Corp. v. Capitol Aviation, Inc.*, 411 F.2d 622 (7th Cir. 1969). See also Annot. 17 A.L.R.3d 1010 Sec. 49. A.R.S. Sec. 44–2398(A)(1) and (2) provides that the agreement may limit the buyer's recovery to repair and replacement of non–conforming goods or parts· and make this remedy exclusive. However, subsection (B) provides that where the circumstances cause an exclusive or limited remedy to fail of its essential purpose, it is no longer deemed exclusive. In *Beal v. General Motors Corporation*, 354 F.Supp. 423 (D.C.Del.1973)[4] the court stated:

"The purpose of an exclusive remedy of replacement or repair of defective parts, whose presence constitute a breach of an express warranty, is to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise. From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered. When the warrantor fails to correct the defect as promised within a reasonable time he is liable for a breach of that warranty. (Citations omitted) The limited, exclusive remedy fails of its purpose and is thus avoided under Sec. 2719(2), whenever the warrantor fails to correct the defect within a reasonable period." 354 F.Supp. at 426.

· [7] We agree with the *Beal* court and find its principles applicable here. Implicit in the terms of the contract is the presumption that the equipment and software could be cured by replacement or repair in the event they became defective. The record reflects sufficient evidence from which a trier of fact could conclude that the Burroughs equipment and program were defective in material and workmanship and that Burroughs could not and did not repair or replace it. In light of *Beal*, we hold that

the remedy of repair or replacement is non–exclusive in the instant case.

Kalil has filed a "cross–appeal". Kalil is not entitled to cross–appeal from a judgment wholly in its favor on any ground since it is not an aggrieved party. *Aegerter v. Duncan*, 7 Ariz.App. 239, 437 P.2d 991 (1968); *DeLozier v. Smith*, 22 Ariz.App. 136, 524 P.2d 970 (1974). If it seeks only to uphold a judgment for reasons supported by the record but different from those relied upon by the trial court, it should designate "cross–issues" in its Issues Presented. *Santanello v. Cooper*, 106 Ariz. 262, 475 P.2d 246 (1970). Two of Kalil's issues in the cross–appeal, which we treat as cross–issues, have already been answered adversely to it. It also contends that the disclaimer of warranties and the limitation of remedies should have been held unconscionable as a matter of law under A.R.S. Sec. 44–2319. This issue is moot in view of our agreement with the *Beal* case.

Reversed and remanded for a new trial.

HATHAWAY, C. J., and RICHMOND, J., concur.

4. See also *Earl M. Jorgensen Co. v. Mark Construction, Inc.*, 540 P.2d 978 (Hawaii 1975).