**NOMO AGROINDUSTRIAL SA DE CV, Plaintiff,**

v.

**ENZA ZADEN NORTH AMERICA, INC., et al., Defendants.**

**No. CV 05–351–TUC–FRZ.**

United States District Court, D. Arizona.

March 19, 2007.

Carlos Armando Sugich, Rodrick Joseph Coffey, Steven H. Williams, Stinson Morrison Hecker LLP, Phoenix, AZ, for Plaintiff.

Jennifer Knapp Riggs, Michael J. O'Connor, Jennings Strouss & Salmon PLC, Collier Ctr, Phoenix, AZ, Waldo W. Israel, Law Office of Waldo W. Israel, Yuma, AZ, for Defendants.

## ORDER

ZAPATA, District Judge.

Pending before the Court are motions for summary judgment filed by all the parties to this litigation. For the reasons stated below, the motions are denied in part and granted in part.

## I. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252, 106 S.Ct. 2505. However, in evaluating a motion for summary judgment, *"the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in his favor."* *Id.* at 255, 106 S.Ct. 2505 (emphasis added). Further, a court *"[must] not weigh the evidence[, make credibility determinations,] or determine the truth of the matter"* at the summary judgment stage, but may only determine whether there is a genuine issue for trial. *Abdul–Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996)(emphasis added); *Balint v. Carson City, Nevada*, 180 F.3d 1047, 1054 (9th Cir.1999); *see also Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 206 F.3d

1322, 1328 (9th Cir.2000) (recognizing that on a motion for summary judgment, "*a district court is entitled neither to assess the weight of the conflicting evidence nor to make credibility determinations*")(emphasis added).

## II. BACKGROUND

In 2004, Plaintiff Nomo Agroindustrial ("Nomo") contacted Defendant Enza Zaden ("Enza") to purchase tomato seeds. Plaintiff is a farming company based in Mexico that grows tomatoes, cucumbers, and other vegetables to be sold in the United States. Enza is a large, international corporation that manufactures seeds. When Plaintiff contacted Enza about obtaining tomato seeds, it informed Enza of problems it had with tomato plants contracting Tomato Spotted Wilted Virus ("TSWV"). Upon informing Enza of its concerns and needs, Enza recommended its Caiman variety tomato seed. In relation to this seed, Enza provided brochures stating that the seed was resistant to TSWV, and Enza also orally informed Plaintiff that the seeds were resistant to TSWV. Based on these assurances, and after working out the details with Enza, Plaintiff contacted a distributor, Defendant Keithly–Williams Seeds ("KWS"), to pay for and obtain the seeds. Shortly after obtaining the seeds, Plaintiff planted the seeds and they germinated into tomato plants. However, the tomato plants contracted TSWV and Plaintiff's entire Caiman tomato crop was destroyed. The litigation in this case arises from the destruction of this crop.

## III. DISCUSSION

**A. Breach of Warranties, "Resistant," Fraud/Misrepresentation, and Promissory Estoppel**

Plaintiff claims that Enza breached express and implied warranties because the Caiman tomato seeds purchased from Enza were not resistant to TSWV as the tomato plants grown from the seeds in question contracted TSWV and were destroyed. Enza employees orally promised Plaintiff that the seeds were "resistant" to TSWV and written advertising materials provided by Enza also promised that the seeds were "resistant" to TSWV; these actions created an express warranty that could not be validly disclaimed by Enza. *See* A.R.S. § 47–2313(1)("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."); A.R.S. § 47–2313 Comment 1(" 'Express warranties rest on 'dickered' aspects of the individual bargain, and go so clearly to the essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered terms.' "); A.R.S. § 47–2313 Comment 4 ("A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under [A.R.S. § 47–2316]."); A.R.S. § 47–2316 and Comment 1("This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude "all warranties, express or implied." It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty . . ."); *see also Triple E, Inc. v. Hendrix and Dail, Inc.,* 344 S.C. 186, 543 S.E.2d 245, 247 n. 12 (2001)(holding that statements in advertising materials may constitute express warranties and citing opinions from numerous jurisdictions also holding that advertising materials may constitute express warranties); *Hawkins Construction Company v. Mat-*

*thews Company, Inc.*, 190 Neb. 546, 209 N.W.2d 643, 654–655 (1973)(same), *disapproved on other grounds, Nat'l Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39 (1983).

As a threshold matter, assuming Enza is bound by the warranty that the seeds were resistant to TSWV, Enza argues that Plaintiff has failed to create a genuine issue of fact supporting a breach of warranty because the evidence shows that the seeds were in fact resistant to TSWV. The Court disagrees.

The parties do not agree on the proper definition of resistant under the circumstances of this case, and have offered competing evidence defining resistant. According to Enza, resistant to TSWV in the context of this dispute can only mean "the ability of a cultivar to limit the development of a given pest or pathogen throughout the whole or part of a growing cycle." According to the scientific journals and expert opinion offered by Enza, this is how resistant must be understood in the seed industry, and resistant to TSWV can not be equated with immune to TSWV. As the tomato seeds contained the Sw5 gene, which is the most commonly used gene by seed manufacturers to resist the spread of TSWV, Enza contends that the seeds were resistant to TSWV. In contrast, Plaintiff argues that the hyper-technical definition of resistant offered by Enza is unrealistic and is not how that term is commonly understood by farmers purchasing seeds. Rather, the expert opinion[1] offered by Plaintiff addresses the definition of resistant as: "When farmers see seed catalogs and/or when seed salesmen express seed cultivars (varieties) as 'resistant' to a disease, they believe the plants are free of any possibility of becoming diseased. In my many years working with farmers throughout the world, it has been my experience that they define resistant as the seeds being immune to said disease. In other words, to the farmer, *immunity* and *resistance* are synonymous ... In this particular instance, the Enza tomato cultivar was completely destroyed by a viral disease, being neither immune nor, in this case, resistant, as proclaimed by the seed company."

While the proper definition of resistant to TSWV appears to be a disputed issue of fact in this case, even under the general definition of resistant advanced by Enza, there is an issue of fact as to whether the Caiman tomato seeds were in fact resistant to TSWV. Enza argues that the seeds were resistant to TSWV because the evidence shows that the seeds sold to Plaintiff contained the Sw5 gene, and that the Sw5 gene is the most commonly used and effective gene in the industry to protect against TSWV. Assuming, *arguendo*, that this is true, Plaintiff argues that this does not mean that the Caiman tomato seeds in question must be considered resistant just because it has the Sw5 gene. In fact, shortly after planting the seeds, Plaintiff noticed that the tomato plants appeared as if they contracted TSWV, the entire crop was subsequently destroyed by TSWV, and laboratory tests on the tomato plants confirmed that they contracted TSWV. As the entire crop was destroyed by TSWV, as opposed to a portion of the crop, Plaintiff correctly argues there is an issue of fact as to whether the seeds could properly

---

**1.** The Court notes that Enza summarily objects to the expert opinion offered by Plaintiff. Enza's objection pertains to the foundation for the expert opinion, but it appears that any foundational concerns have not been fully examined by the parties through expert depositions. Thus, it appears that these foundational objections are premature, and that foundation for the opinion in question could be established at trial. As such, the Court denies Enza's objection.

be considered resistant to TSWV despite the presence of the Sw5 gene. While Enza argues that evidence from their experts show that a pathogen other than TSWV actually caused the tomato crop failure, this is simply another issue of fact properly left to the jury. Accordingly, Enza's motion for summary judgment as to merits of the breach of warranty claim is denied.

In addition, as to whether the seeds were actually resistant, Plaintiff claims that Enza is liable for fraud, fraudulent concealment, negligent misrepresentation, and promissory estoppel. Generally, to establish the requisite fraudulent conduct to support these claims, Plaintiff must show: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562 (1998)(discussing the elements of fraud); *see also St. Joseph's Hosp. and Medical Center v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808 (1987)(discussing negligent misrepresentation: "One who ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."); *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 497, 38 P.3d 12 (2002)(discussing fraudulent concealment: "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.")(internal quotes and citations omitted); *Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 507, 114 P.3d 835 (2005)(promissory estoppel is shown where one makes a promise and should have reasonably foreseen that another would reasonably rely on that promise to their detriment, and injustice can not be avoided unless the promise is enforced).

Plaintiff argues that Enza knew the tomato seeds were not resistant to TSWV when it promised in writing and orally that the seeds were resistant to TSWV. Plaintiff has introduced evidence showing that Enza knew that its seeds were not resistant to all isolates of TSWV. Rather, Enza decided to label the seeds resistant to TSWV based solely on the presence of the Sw5 gene in the seeds. Enza only tested the resistance of the seeds to TSWV by using a single isolate of TSWV which is known to be blocked by the Sw5 gene. Although Enza knew that there were isolates of TSWV that were impervious to the Sw5 gene, Enza did not test their seeds with those isolates as it knew that the seeds would be susceptible to those isolates of TSWV. Enza did not disclose these circumstances to Plaintiff when it promised that the seeds were resistant to TSWV. Enza argues that its blanket statement that the seeds were resistant to TSWV was proper as the presence of the Sw5 gene meant that it was resistant to the most prevalent forms of TSWV. Nevertheless, under the circumstances at bar, there is an issue of fact as to whether Enza knew the seeds were not resistant to TSWV at the time it promised Plaintiff that the seeds were actually resistant to TSWV. Furthermore, there are obviously

issues of fact as to whether Enza intended Plaintiff to rely on those misrepresentations, and that Plaintiff reasonably relied on those misrepresentations to its detriment. Thus, Enza's motion for summary judgment as to the fraud, fraudulent concealment, negligent misrepresentation, and promissory estoppel claims is denied.

## B. The Validity of the Disclaimer of Warranties

■ Enza argues that it validly disclaimed all warranties pursuant to the language on the invoice signed by Plaintiff's representative. Enza certainly did not validly disclaim the express warranty in question as discussed above, and the Court also finds that Enza did not validly disclaim any implied warranties. *See* A.R.S. § 47–2313 and Comments 1 and 4; A.R.S. § 47–2316(A) and Comment 1. Pursuant to A.R.S. § 47–2316, implied warranties may be disclaimed in writing only if the disclaimer is conspicuous. Pursuant to A.R.S. § 47–1201(10), "conspicuous" is defined as follows:

> "Conspicuous", with reference to a term, means so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is conspicuous or not is a decision for the court. Conspicuous terms include the following: (a) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size; and (b) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of

the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

A review of the invoice in question shows that the type of seeds, quantity of seeds, price of seeds, and grand total appear on the front of the invoice, and the signature of Plaintiff's representative also appears on the front of the invoice below this information. However, in micro print that is tiny compared to the rest of the information appearing on the front of the invoice, language appears in the lower left hand corner of the invoice stating that the buyer has read and agrees to the disclaimers [2] on the back of the invoice. This is not adequate as a reasonable person would not be on notice of the disclaimers at issue in this case. *See id.* Furthermore, Plaintiff has cited several persuasive cases from other jurisdictions holding that disclaimers appearing on the back of invoices are not "conspicuous," and Enza has not cited any cases that undermine the conclusion that the invoice purporting to disclaim warranties was "conspicuous." *See id.; Providence & Worcester R. Co. v. Sargent & Greenleaf, Inc.,* 802 F.Supp. 680, 688 (D.R.I.1992)(language on the back of a contract purporting to disclaim any warranties was not conspicuous, and therefore the disclaimer of warranties was invalid); *Massey–Ferguson, Inc. v. Utley,* 439 S.W.2d 57 (Ky.1969)(disclaimer of warranty was not conspicuous where it was on the back of a contract and was referred to by words only in ordinary type on the front); *see also Borden, Inc. v. Advent Ink Co.,* 701 A.2d 255, 260–261 (Pa.Super.1997); *Krupp PM Engineering, Inc. v. Honey-*

---

**2.** The disclaimers on the back of the invoice capitalize language pertaining to disclaiming warranties and the limitation of damages. However, that does not change the fact that the front of the invoice, where the quantity,

price, and the buyer's signature appears, fails to actually put the buyer on notice of the disclaimer of warranties on the back of the invoice.

*well, Inc.*, 209 Mich.App. 104, 530 N.W.2d 146, 149 (1995). Accordingly, the Court finds that the disclaimer of warranties at issue were not "conspicuous" and are therefore invalid.[3]

### C. The Validity of Enza's Limitation of Damages Clause

■ Enza argues that to the extent there was any breach of warranty, damages are limited to the purchase price of the seeds pursuant to the language in the invoice. In response, Plaintiff primarily argues that the limitation of damages clause under the circumstances of this case fails of its essential purpose and is otherwise unconscionable. The Court agrees with Plaintiff.

Pursuant to A.R.S. § 47–2719(B), a limitations of damages clause is invalid "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose ..." Further, A.R.S. § 47–2719(C) states that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." The comments to this section state: "[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed." *See* Comment 1 to A.R.S. § 47–2719(B); *see also Roberts v. Morgensen Motors,* 135 Ariz. 162, 166–167, 659 P.2d 1307 (1982)(holding that

while the seller could properly limit the remedy, "this remedy is no longer exclusive where the circumstances cause this exclusive or limited remedy to fail of its essential purpose."); *Kalil Bottling Co. v. Burroughs Corp.,* 127 Ariz. 278, 282, 619 P.2d 1055 (1980). A claim of unconscionability under the UCC in Arizona can be established based on substantive unconscionability alone, "especially in cases involving ... limitations of remedies." *Maxwell v. Fidelity Financial Services,* 184 Ariz. 82, 89–91, 907 P.2d 51 (1995). "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed ... Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*

As Plaintiff correctly argues, unlike many products (i.e., a television, stereo, etc.) that can repaired or replaced which would actually make the buyer whole and otherwise fulfill the purpose of the contract and related warranties, simply replacing seeds or refunding the price of seeds in the agricultural context is totally inadequate. Rather, the farmer's sole purpose in purchasing seeds is to harvest a crop from those seeds. The true value of the seeds only comes from the crop yielded which is preceded by considerable time and cost expended by the farmer. A farmer's lost growing season and the accompanying loss of expected profits due to defective seeds clearly is not compensated by simply replacing or refunding the price of the defective seeds. As such, numerous courts have found that such limitation of

---

**3.** The Court notes that Plaintiff also argues Enza can not benefit from the disclaimers contained in KWS' invoice. However, the Court need not address this issue as the Court has found that the disclaimer of warranties are invalid as they were not "conspicuous."

damages provisions fail of their essential purpose and are unconscionable. In *Mullis v. Speight Seed Farms, Inc.*, the court rejected the seed manufacturer's attempt to limit damages to replacement of the defective seeds as unconscionable, and reasoned:

> [Defendant] relies on [cases pertaining to television sets, computer hardware and software, and piping] for its position that its limitation of remedy provision should be upheld as valid. However, such cases are distinguishable as they involve products such as television sets, computers, and piping, the value of which is established by the product itself, rather than agricultural seeds, the value of which is established by the plant grown from the seed. In other words, [Plaintiff] was forced to expend substantial sums of money for bed preparation, fumigation, plastic covering for the seed beds, labor, fertilizer, and irrigation, before the seed was of any benefit to him. Additionally, products such as television sets, computers, and piping are subject to repair or replacement remedies whereas a failed crop is not repaired or replaced by the original cost of the seed ... In the present case, [Plaintiff] is a farmer, not a professional seed merchant. [Plaintiff] purchased the seed over the telephone during a conversation in which only the seed variety and price were discussed. [Defendant] does not negotiate warranty terms with any customers. [Plaintiff], like most farmers, was not in a position to bargain for more favorable contract terms, nor was he able to test the seed before the purchase. A crop failure is inevitable if the ... seed is ineffective and to enforce the provisions here in question, which would only allow the return of the purchase price, would leave [Plaintiff] without any substantial recourse for his loss. In essence, [Plaintiff] would be left without a remedy for another's breach ... [I]t is apparent that the allocation of risk for ineffective seeds is better shouldered by the manufacturer of the seed, rather than the consumer. The consumer does not have the ability or resources to test the seed prior to its use; however, the manufacturer does. Furthermore, the farmer is required to expend large sums of money before any defect in the seed is noticeable, and once a defect is found an entire year's crop might be worthless. Once the crop has failed, the farmer's only recourse is monetary compensation to cover his lost profit and expenditures; replacement and repair are not viable options. The manufacturer is also in a better position to allocate the cost of testing among all consumers of its product ... [Defendant's] disclaimer of warranty and limitation of remedies provision is unconscionable and unenforceable ...

See *Mullis*, 234 Ga.App. 27, 505 S.E.2d 818, 820–822 (1998); see also *Schmaltz v. Nissen*, 431 N.W.2d 657, 662 (S.D.1988)(finding limitation of damages to replacement cost of seed unconscionable and stating that "like most farmers, [Plaintiffs] were not in a position to bargain for more favorable contract terms, nor were they able to test the seed before their purchase. A loss of yield from an intended crop due to inferior seed is inevitable, and [Plaintiff] should not be left without a remedy."); *Latimer v. William Mueller & Son, Inc.*, 149 Mich.App. 620, 637, 386 N.W.2d 618 (1986)(invalidating limitation of remedies to replacement of defective seeds as unconscionable and reasoning that "where the defect could not be discovered until after the seed was planted, the remedy prescribed in the limitation of liability clause is an illusory one which represents no remedy at all ..."); *Lutz Farms*

v. *Asgrow Seed Company*, 948 F.2d 638, 646 (10th Cir.1991)(holding that limitation of remedies to replacement of defective seeds failed of its essential purpose and was unconscionable). While there is no Arizona authority directly addressing these issues, the Court finds the authority in question persuasive and directly applicable to the facts of this case.[4] Accordingly, the Court finds that the limitation of damages clause at issue in this case fails of its essential purpose, is unconscionable, and is

---

4. The Court notes that, unlike the cases cited by Plaintiff and discussed above, the cases cited by Enza are not directly on point. Rather, the analysis of unconscionability in Enza's cases primarily involved different fact scenarios, failed to adequately consider the unique issues implicated in this type of case, or otherwise are unpersuasive. For example, in arguing that the limitation of damages is not unconscionable, Enza relies heavily on *Southwest Pet Products, Inc. v. Koch Industries, Inc.* ("*Southwest* "), 107 F.Supp.2d 1108 (D.Ariz.2000). While the court in *Southwest* found that a limitation of damages clause limiting the remedy to replacement of the product (wheat) was not unconscionable, the case is distinguishable. In *Southwest*, plaintiff (a large manufacturer of dog food) purchased wheat from defendant which was subsequently used to make dog food. At the time of the purchase, both plaintiff and defendant were well aware of a naturally occurring substance in wheat (vomitoxin) that could be harmful to pets if the level of vomotoxin in the wheat was above acceptable levels. As such, as soon as plaintiff received the wheat from defendant, it conducted independent tests to ensure that the vomotoxin in the wheat was at a safe level. Plaintiff's independent tests confirmed that the vomotoxin was at a safe level, and Plaintiff accepted the wheat as a conforming good. In contrast, if the tests had found unacceptable levels of vomotoxin upon receipt of the wheat, plaintiff simply could have rejected the wheat as nonconforming and subsequently obtained acceptable wheat. After the wheat was processed into dog food and sold to distributors, however, plaintiff learned that the independent tests that it previously conducted were wrong, and that the wheat did have unsafe levels of vomotoxin making the dog food unsafe to consume. At this point, plaintiff sued defendant claiming that the limited remedy of the replacement cost of the wheat failed of its essential purpose and was unconscionable, and that plaintiff should be fully reimbursed for the lost profits incurred. Under these unique circumstances, the court found that the limitation of damages provision was appropriate as plaintiff obviously had the opportunity and means to test the product for vomotoxin upon receipt, plaintiff actually tested the product for vomotoxin upon receipt, and plaintiff accepted the product as conforming based on its independent tests, as opposed to any representations made by defendant. Furthermore, if Plaintiff had actually conducted an accurate test, it could have discovered the flaw at the time of receipt (i.e. prior to processing the wheat into dog food and providing it to the distributor), and the remedy of replacement or refund of the wheat would have been an appropriate resolution of the problem. As such, in upholding the limitation of remedies at issue, the court stressed: "Upon receipt of the wheat, [Plaintiff] tested it and found it to be conforming. Based on its own tests, it processed the wheat into dog food and forwarded the finished product to [the distributor]. Later, it was determined that the testing results were inaccurate. [Plaintiff] cannot now hold [Defendant] liable for the deficiencies in its own testing process." *Id.* at 1115. The Court finds *Southwest*, along with the other cases relied on by Enza, unpersuasive in resolving the dispute at bar. Lastly, the Court notes that Enza argues that the cases cited above finding unconscionability are distinguishable from this case as there were no latent defects in the seeds at issue and the contract at issue was in the commercial context. The Court disagrees. There was a latent defect in relation to the seeds as Plaintiff could not readily discover that the seeds would all eventually contract TSWV upon receipt, and that the entire tomato crop would be destroyed as a result. Rather, only after Plaintiff planted the seeds, and they grew into tomato plants could Plaintiff truly assess the actual resistance to TSWV. Further, as the cases cited above were in the commercial context to the extent they involved farmers seeking to recover lost profits due to the unexpected lost crops from defective seeds, the cases are appropriately applicable to the facts of this case.

unenforceable under the circumstances of this case. Thus, Plaintiff's cross-motion for summary judgment on these issues is granted.

## D. KWS and Express and Implied Warranties

■ Plaintiff argues that KWS is liable to it as it breached an express warranty, an implied warranty of fitness for a particular purpose, an implied warranty of merchantability, and breached the contract when it violated the warranties in question. *See* A.R.S. § 47–2313 (express warranty: "*Any affirmation of fact or promise made by the seller* to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.")(emphasis added); A.R.S. § 47–2315 (implied warranty of fitness for a particular purpose: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that *the buyer is relying on the seller's skill or judgment to select or furnish suitable goods,* there is . . . an implied warranty that the goods shall be fit for such purpose.")(emphasis added); A.R.S. § 47–2315 Comment 1(emphasizing that the "buyer, of course, must actually be relying on the seller" for the implied warranty of fitness for a particular purpose to apply); A.R.S. § 47–2314 (implied warranty of merchantability: a warranty that goods shall be merchantable is implied in a contract and the goods shall be at least *fit for their ordinary purpose*

such that the good would pass without objection in the trade)(emphasis added).

The Court disagrees with Plaintiff's position. As KWS correctly emphasizes, this case is about breaching a warranty that the tomato seeds were resistant to TSWV. A review of the record before the Court shows that KWS never communicated to Plaintiff (orally, in writing, or in any other manner) that the tomato seeds at issue were resistant to TSWV. Furthermore, a review of the record shows that Plaintiff never relied on anything KWS communicated to Plaintiff in actually purchasing the seeds at issue. Rather, Plaintiff (through the President Jesus Molina who was solely responsible for purchasing seeds for the company) approached the manufacturer (Enza) of the seeds directly, had all communications regarding the seeds directly with Enza, obtained all relevant information such as brochures[5] and promises regarding the seeds only from Enza, and only contacted KWS to pick up and pay for the seeds after the details and assurances were negotiated with Enza. Indeed, a review of Molina's deposition testimony abundantly supports these undisputed facts. *See* KWS' Statement of Facts (containing citations and excerpts of Molina's deposition testimony) at ¶¶ 10, 12,17, and 18. As such, there is no issue of fact as to whether KWS is liable to Plaintiff for any purported express warranty or implied warranty of fitness for a particular purpose. *See* A.R.S. § 47–2313; A.R.S. § 47–2315; A.R.S. § 47–2315 Comment 1. The Court also rejects Plaintiff's argument that the seeds in question violated the implied

5. Molina's deposition confirms that brochures were provided to Plaintiff only by Enza. Molina's vague affidavit that states that KWS oftentimes displays brochures and "probably" *displayed the Enza brochures does not undermine* the testimony in his deposition. As such, Plaintiff's argument that KWS somehow created an express warranty via a brochure is unavailing. Further, the three cases cited by Plaintiff (*Triple E, Stumler, Hamkins Const. Co.*) pertaining to the general, logical proposition that advertisements can constitute warranties are inapplicable to this case as KWS never provided any advertising materials to Plaintiff and there is certainly no evidence that KWS adopted any warranties in Enza's advertising materials.

warranty of merchantability because the tomato plants that germinated from those seeds eventually contracted TSWV and were destroyed as a result. While there is an issue of fact as to whether the seeds were actually resistant to TSWV as warranted by Enza, KWS simply made no such warranty in any manner. Rather, the seeds were fit for their ordinary purpose and unobjectionable in the trade as they were the correct Caiman tomato seeds, and the seeds germinated into Caiman tomato plants. Presumably, if the plants were not subsequently infected by TSWV which caused the demise of the plants, Plaintiff would have produced a viable crop suitable for sale on the open market. As such, as the seeds were fit for their ordinary purpose (as opposed to the unique purpose of staving off TSWV which KWS never warranted), KWS is not liable for any breach of the implied warranty of merchantability.

▮ Lastly, despite the above circumstances, Plaintiff attempts to argue that KWS is essentially bound by all representations made only by Enza and therefore equally liable as Enza because KWS is essentially Enza's agent. The case law cited by Plaintiff on this issue does not help its position, and regardless, Plaintiff has not introduced any evidence bearing on the agency issue that would create an issue of fact. *See Liberty Homes, Inc. v. Epperson,* 581 So.2d 449, 453 (Ala.1991)(holding the manufacturer of a mobile home liable to the buyer for breach of warranty even though the buyer did not directly contract with the manufacturer; as the seller of the mobile home only sold new mobile homes from the manufacturer in question, the seller was considered an agent of the manufacturer such that there was sufficient privity of contract for the buyer to sue the manufacturer directly); *Dorf Int'l v. U.S.,* 291 F.Supp. 690, 694 (Cust.Ct.1968)(generally finding that a company that sold products of the manufacturer was essentially an agent of the manufacturer as it only sold and promoted products of the manufacturer, and the manufacturer essentially controlled every aspect of the seller's business activities); *C.B.S. Business Equipment Corp. v. Underwood Corp.,* 240 F.Supp. 413, 419 (S.D.N.Y.1964)(same); *Grey v. Hayes–Sammons Chemical Co.,* 310 F.2d 291, 299 (5th Cir.1962)(same). Plaintiff has not introduced any evidence reflecting that KWS exclusively sells Enza products, that KWS exclusively devotes its time to promoting and selling Enza's products, or that Enza somehow controls most aspects of KWS' business activities such that KWS could be considered an agent of Enza consistent with the cases cited by Plaintiff. Rather, Plaintiff has simply stated that in its opinion, it views KWS as an agent of Enza. This is insufficient to create an issue of fact. Accordingly, as Plaintiff has not introduced any evidence showing that KWS breached any warranties it owed to Plaintiff, or otherwise violated any terms of their contract, KWS' partial motion for summary judgment is granted.[6]

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Enza's Motion for Summary Judgment (Doc. # 36) is **denied.**[7]

(2) Nomo's Cross–Motion for Summary Judgment Regarding the Limitation of Damages Defense is **granted.**

---

6. The Court need not address KWS' lack of timely notice of breach argument as the summary judgment motion is being granted on other grounds.

7. The Court notes that Enza has filed a motion for security for costs. In that motion, Enza asks the Court to force Nomo to post a bond for Enza's costs pursuant to *Arizona* Rule of Civil Procedure 67(d). As this case is

(3) KWS' Partial Motion for Summary Judgment (Doc. # 34) is **granted**.

(4) The parties' shall file their Joint Proposed Pretrial Order and any motions in limine within 30 days of the filing date of this Order. *See* Doc. # 10 (Scheduling Order at 3 and Sample Pretrial Order). Responses to motions in limine are due within 10 days, and no replies will be permitted unless otherwise ordered by the Court. *See id.*

(5) Alternatively, if the parties so choose, they may engage in a settlement conference with a Magistrate Judge at no cost to the parties.[8] If the parties choose this option, they should contact the Court which can set up the conference and stay the remaining deadlines.

obviously in federal court, the Federal Rules of Civil Procedure apply. Enza has not cited any authority showing that Arizona Rule of Civil Procedure 67(d) has actually been applied in federal court. The Court will not require Nomo to post a bond to cover Enza's costs. Enza's motion (Doc. # 123) is denied.

8. The parties may also choose to engage in a private sector settlement conference as well.